UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| THE EASTLAND OIL COMPANY,<br><br>Petitioner,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR BUREAU OF LAND MANAGEMENT, NEW MEXICO STATE DIRECTOR OF THE BUREAU OF LAND MANAGEMENT, and the ROSWELL FIELD MANAGER OF THE BUREAU OF LAND MANAGEMENT,<br><br>Respondents. | Cause No.<br><br><br>PETITION FOR REVIEW OF AGENCY ACTION |

## I.   INTRODUCTION

**THE EASTLAND OIL COMPANY** ("Eastland") hereby petitions the court for review of the July 14, 2025, Decision of the New Mexico State Director ("State Director") of the Bureau of Land Management ("BLM") ("BLM Decision"), a copy of which is attached hereto, and four (4) Written Orders ("Orders") dated January 8, 2025, issued by the Roswell Field Office ("RFO"). Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, Eastland appeals the BLM Decision affirming issuance of the Orders requiring Eastland to submit a Sundry Notice, Notice of Intent to plug and abandon the Cato San Andres Unit 143 Well, Cato San Andres Unit 149 Well, Cato San Andres Unit 151 Well, and Cato San Andres Unit

152 Well ("Subject Wells") and to reclaim the well sites and all associated disturbances including utility corridors, access roads, and remove all associated facilities and equipment. The State Director erroneously relied upon an unsupported and false determination that Eastland was a prior record title owner ("RTO") of Federal Oil and Gas Lease NMNM 0022636 ("Lease"), when in fact Eastland is not now and has never been RTO of the Lease. The Decision is fatally flawed, lacks a rational basis, is arbitrary and capricious and must be reversed. Further, the Orders erroneously rely upon 43 C.F.R. §3106.72 (2024) in determining that Eastland, as an alleged previous operating rights owner and/or RTO, had a continuing obligation including the responsibility to plug and abandon the Subject Wells and are equally fatally flawed, lack a rational basis, and are arbitrary and capricious, and must not be sustained.

## II. JURISDICTION AND VENUE

This suit is filed pursuant to the APA and its implementing regulations and policies. Jurisdiction over this action is conferred by 28 U.S.C. § 1331. Venue is proper before the District of New Mexico pursuant to 28 U.S.C. §§ 1391 (b) and (e). The State Office of the New Mexico BLM and the Roswell Field Office of the BLM are located in New Mexico, and the Subject Wells are located in New Mexico.

### III. PROCEDURAL HISTORY

#### A. Prior Related History – SDR 2024-02

1. On October 20, 2023, the RFO issued Notices of Non-Compliance ("INCs") requiring Eastland to submit a Sundry Notice, Notice of Intent, and plan to plug and abandon the Subject Wells, reclaim the well sites and access roads, and remove associated facilities and equipment (collectively "P&A"). The INCs were mailed on October 23, 2023 and received by Eastland on October 26, 2023. Simultaneously, the BLM also issued INCs to Shell Oil Company ("Shell") also requiring them to P&A the Subject Wells.

2. On November 22, 2023, Eastland filed a Petition for Administrative Review by the State Director, Request for Administrative Record, Request for Extension of Time to File Supporting Materials and Statement of Reasons, and Request for Oral Hearing which was docketed as SDR 2024-02 ("SDR 2024-02").

3. On December 14, 2023, the State Director issued a decision granting Eastland's request for the administrative record, its request for extension of time, request for stay of the INCs and any corrective action pending decision of the State Director, and granting an oral hearing.

4. On January 29, 2924, Eastland filed its Statement of Reasons and Brief in SDR 2024-02, which included an assertion that the administrative record was incomplete and failed to support the INCs.

5. Oral argument in SDR 2024-02 was held on March 1, 2024.

6. On June 28, 2024, the State Director issued a Decision finding the RFO had acted in error when it failed to follow proper procedure and remanded the matter back to the RFO to pursue the current operating rights owners of the lease to perform lease obligations.

### B. History Regarding the Current Appeal – SDR 2025-09

7. On January 8, 2025, the RFO issued the Orders requiring Eastland to P&A the Subject Wells. Eastland became an aggrieved party upon the issuance of the Orders on remand.

8. On January 29, 2025, Eastland served the State Director with its Petition for Administrative Review by State Director, Request for Administrative Record, Request for Extension of Time to File Supporting Materials and Statement of Reasons, and Request for Oral Hearing requesting the State Director to review and overturn the Orders.

9. On July 14, 2025, the State Director issued the BLM Decision summarily affirming the Orders and denying Eastland's request to review the administrative record, for extension of time to submit supporting documents and a Statement of Reasons and Brief, the stay of the Orders, and request for oral hearing. The BLM Decision justified its denial of Eastland's request for a copy of the administrative record stating "the WOs (Orders) contain ample justification for their

issuance" and stated that "BLM's records demonstrating Eastland's past RTO status" are attached to the Decision as Attachment 3. The BLM Decision further stated that a complete AR was provided to Eastland in a previous SDR (SDR 2024-02) regarding the Subject Wells.

10. The BLM Decision's summary affirmance of the Orders relied solely on the Orders, the administrative record filed in SDR 2024-02, and documents attached to the Decision consisting of "Run Sheet" and "Historical Operating Rights Worksheet".

11. On August 22, 2025, Eastland filed a Motion for Reconsideration with the State Director, requesting the State Director to reconsider and rescind the BLM Decision. Eastland's Motion for Reconsideration attached a complete copy of the Lease file.

12. Recognizing that the Motion for Reconsideration would not stay the Decision, Eastland timely filed a Notice of Appeal to the Interior Board of Land Appeals ("IBLA") on August 27, 2025, along with a Petition for Stay Pending Appeal.

13. On September 9, 2025, the Bureau of Land Management ("BLM") filed an Unopposed Motion for Extension of Time to respond to Eastland's Petition for Stay requesting a 14-day extension of time.

14. On September 11, 2025 the Interior Board of Land Appeals ("IBLA")

issued an Order allowing the BLM until September 19, 2025 to file its response to Eastland's Petition for Stay and also required the BLM to file the "complete record and legible copies of the Lease and all assignments/transfers of record title and operating rights in the Lease" by September 19, 2025.

15. On September 19, 2025 the BLM filed its Response Opposing Petition for Stay.

16. On September 19, 2025, the BLM filed its Administrative Record ("AR") in this case along with the Administrative Record in SDR 2024-02. The AR includes a copy of the Lease and all assignment/transfers of record title and certain assignments/transfers of operating rights in the Lease as required by the September 11, 2025 IBLA Order. The AR did not include Eastland's Motion for Reconsideration filed and received by the State Director on August 22, 2025. Of critical importance, the AR also failed to include the Attachments to the BLM Decision.

17. On September 29, 2025, Eastland filed a Motion for Leave to File Reply to Response in Opposition to Petition for Stay.

18. On November 13, 2025, the IBLA denied Eastland's Petition for Stay on the basis that pursuant to Departmental regulations, 43 C.F.R. § 4.405(b)(8), a petition for stay was deemed denied if the IBLA does not act on the petition within 45 days and due to the government shutdown it was unable to meet the 45-day

deadline. The IBLA Order also denied Eastland's Motion for Leave to File Reply in Response in Opposition to Petition for Stay as moot.

19. Upon denial of the petition for stay, the BLM Decision goes into effect and becomes a final appealable order pursuant to **43 C.F.R. § 4.405.**

20. The APA provides a right to judicial review to any "person suffering legal wrong because of agency action." **5 U.S.C § 702.** Actions that are reviewable under the APA include final agency actions "for which there is no other adequate remedy in a court." Under the APA, a reviewing court shall, *inter alia,* "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." **5 U.S.C § 702(2)(A).**

21. Eastland's Petition for Review of Administrative Action filed in this Court is timely.

## C. FACTUAL BACKGROUND

### A. Facts Relevant to Ownership of Record Title of the Lease

22. The BLM Decision states, "the State Director's review is limited to the WOs (Orders), which were issued according to BLM regulations and policy in effect at the time of enforcement, and Eastland's status as a past RTO, as evidenced in BLM records (Attachment 2). The State Director has identified no error in this decision."

23. The BLM Decision further states, "BLM's records demonstrating

Eastland's past RTO status are attached to this decision (Attachment 3)".

24. Neither Attachment 2 nor Attachment 3 show Eastland as a past RTO of the Lease.

25. The chain of title contained in the Lease file establishes that Eastland is not, was not, and never has been RTO.

26. The chain of title regarding Record Title contained in the Lease file is as follows:

    a. The BLM issued the Lease to Emmett D. White effective September 1, 1957.

    b. By Assignment of Oil and Gas Lease dated June 15, 1959, approved by the BLM effective July 1, 1959, Emmett S. White and Blanche V. White, his wife, conveyed Record Title to L. B. Hodges.

    c. By Assignment of Oil and Gas Lease dated July 25, 1963, approved by the BLM effective November 1, 1963 L. B. Hodges and wife, Willie G. Hodges conveyed 100% of Record Title to Shell.

d. By Assignment Affecting Record Title to Oil and Gas Lease dated December 30, 1982, approved effective by the BLM February 1, 1985, Shell conveyed 100% of Record Title to Apollo Energy, Inc.[1] [2]

e. Effective April 14, 1989, the BLM recognized the merger of Apollo Energy, Inc. with and into Kelt New Mexico, Inc.

f. By Assignment of Record Title Interest in a Lease for Oil and Gas or Geothermal Resources dated November 17, 1995, approved by the BLM effective December 1, 1995, Kelt New Mexico, Inc. conveyed 100% of Record Title to Secondary Oil Corporation.

g. Effective March 3, 1998, the BLM recognized the corporate name change from Secondary Oil Corporation to Sierra Blanca Operating Company.

h. By Assignment of Record Title Interest in a Lease for Oil and Gas or Geothermal Resources dated December 23, 1999, approved by the BLM effective March 1, 2000, Sierra Blanca Operating Co. conveyed 100% Record Title to UHC New Mexico Corporation.

---

[1] Shell's assignment of 100% of record title establishes that Shell understood it still owned 100% of record title and BLM's approval establishes BLM's understanding that Shell owned 100% of record title.

[2] By Assignment dated December 30, 1982, recorded in the Chaves County records in Book 235X, page 683, Shell conveyed to Apollo Energy, Inc. all of its right, title, and interest in and to the Lease, including all of its right, title, and interest in and to the Operating Agreement between Shell and Eastland described in paragraph 33.

     i. By Assignment of Record Title Interest in a Lease for Oil and Gas or Geothermal Resources dated June 30, 2009, approved by BLM effective August 1, 2009, UHC New Mexico Corporation conveyed 100% of Record Title to Cano Petro of New Mexico, Inc.[3]

27. The BLM Decision erroneously concludes that Eastland acquired Record Title "through the Reassignment of Interest in Drilling and Operating Agreement effective September 1, 1968." That Reassignment is described in Paragraph 41 below where Eastland conveyed certain contractual rights back to Shell. The Reassignment does not support the conclusion that Eastland owned Record Title.

28. Eastland is not, was not, and never has been RTO of the Lease. The State Director erred in so concluding, therefore the BLM Decision lacks a rational basis and is arbitrary and capricious.

29. Unlike Eastland, Shell is a previous RTO of the Lease.

30. Under applicable regulations, Shell, as a previous RTO has a continuing obligation to P&A the Subject Wells.

31. Although the BLM issued INCs to Shell on October 20, 2023, at the same time it issued the INCs to Eastland, BLM has failed to continue pursuing Shell

---

[3] At the time of the assignment of Record Title to Cano Petro of New Mexico, Inc., the Cato San Andres Unit 151 Well had been in shut-in status for over 4 years and should have already been required to be plugged and abandoned.

or to require Shell to P&A the Subject Wells notwithstanding Shell's continuing obligation to do so.

32. The BLM's failure to continue to pursue Shell and require Shell to P&A the Subject Wells is arbitrary and capricious.[4]

### B. Facts Relevant to Ownership of Operating Rights of the Lease

33. The Orders state that BLM records show Eastland as a previous "record title and/or operating rights owner" of the Lease.

34. Eastland, as Operator, contracted with Shell to operate, test, and develop certain tracts covered by Lease pursuant to a Drilling and Operating Agreement ("Operating Agreement") dated May 10, 1968, between Shell and Eastland. The Operating Agreement does not contain words of grant. The Operating Agreement further provides that in the event production of oil, gas, and/or other hydrocarbon substances are produced from the described tracts, Eastland would own such production, subject to burdens including royalties, overriding royalties, production payments, and production taxes.

35. The Operating Agreement pertained to two Federal Oil and Gas Leases, including the Lease at issue herein, collectively covering a total of approximately 400 acres. The Subject Wells cover 240 acres included within the original 400 acres.

---

[4] Upon information and belief, all other previous RTO and operating rights owners are defunct and/or bankrupt companies or are deceased individuals.

36. Article XIII of the Operating Agreement required approval of the Secretary of the Interior.

37. On August 8, 1968, Shell filed a Designation of Operator with the BLM designating Eastland as the operator under the Lease. The Designation of Operator is contained in the BLM Lease file but not provided in the Administrative Record.

38. The Operating Agreement was tendered to the BLM for approval by Eastland on or about August 14, 1968.

39. By BLM Decision dated September 6, 1968, the BLM approved the Operating Agreement.

40. By Stipulation dated July 28, 1969, Shell and Eastland jointly stated that wells were completed on the tracts covering the S/2NE/4, N/2NE/4 Section 27 and the N/2SE/4 Section 23, Township 8 South, Range 30 East, N.M.P.M., in accordance with the terms of the Operating Agreement. The Stipulation pertained to production from 240 acres of the 400 acres in the Operating Agreement. The Stipulation contained no words of grant.

41. By Reassignment of Interest in Drilling and Operating Agreement dated July 30, 1969 ("Reassignment") Eastland conveyed its contractual interest in the remaining 160 acres originally included in the Operating Agreement to Shell.

42. By BLM Decision dated October 17, 1969 the BLM accepted the Stipulation and approved the Reassignment of Interest In Drilling and Operating Agreement to Shell.

43. By Assignment of Operating Rights dated August 1, 1983, recorded in Book 246, page 782, Eastland conveyed all of its contractual rights in Subject Wells to Apollo Energy, Inc. ("Apollo"), subject to the terms of the Operating Agreement ("Apollo Assignment").

44. Pursuant to the terms of the Assignment of Operating Rights Apollo assumed all of Eastland's obligations under the Lease and the Subject Wells.

45. On August 9, 1983, Apollo filed changes of operatorship of the Subject Wells for approval by the BLM. BLM approved the changes of operatorship on August 11, 1983. The changes of operatorship are contained in the BLM well files for the Subject Wells but not provided in the Administrative Record.

46. Eastland filed a Transfer, Assignment, or Sublease of Operating Rights in Oil and Gas Lease dated August 1, 1983 confirming its transfer of 100% of its contractual interests underlying the Subject Wells to Apollo. BLM approved the transfer effective September 1, 1983.

47. 43 C.F.R. § 3106.2-3(b) (1982) was the applicable regulation regarding continuing lease obligations upon approval of the transfer from Eastland to Apollo.

48. By application of 43 C.F.R. § 3106.2-3(b) (1982), operating rights owners were relieved of any further obligations under the Lease and the assignee became responsible for the performance of all lease obligations.

49. Under 43 C.F.R. § 3162.3-4 (1982), the obligation to plug and abandon a once productive well accrued to the Lessee (RTO) of the Lease only after a determination that the well was no longer capable of production in paying quantities.

50. The BLM Decision and Orders erroneously rely upon 43 C.F.R. § 3106.72 (2024) in determining that Eastland, as an alleged previous operating rights owner, had a continuing obligation including the responsibility to P&A the Subject Wells.

51. The BLM's failure to apply the applicable regulation and erroneously rely on an inapplicable regulation in determining whether Eastland had an obligation to P&A the Subject Wells is arbitrary and capricious.

52. Since Shell was the past RTO, the BLM's actions in failing to pursue Shell and require Shell to P&A the Subject Wells is arbitrary and capricious.

### D. REQUEST FOR RELIEF

**WHEREFORE,** Petitioner prays this Court:

    A. Find that the BLM Decision and underlying Orders are arbitrary, capricious, and lacked a rational basis.

    B. Issue an Order setting aside the BLM Decision and the Orders.

    C. Issue an Order granting such further relief as this Court may

deem just and proper.

                              **HINKLE SHANOR LLP**

                              */s/ Jared A. Hembree*

                              Jared A. Hembree
                              Melinda A. Branin
                              P.O. Box 10
                              Roswell, NM 88202-0010
                              575-622-6510 / 575-623-9332 Fax
                              jhembree@hinklelawfirm.com
                              mbranin@hinklelawfirm.com
                              *Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on this January 8, 2026, I caused the foregoing Petition for Review of Agency Order, to be served via US. Mail to the following:

Samantha E. Kelly
Office of the Solicitor
Southwest Region
505 Marquette Ave. NW, Suite 1800
Albuquerque, NM 87102
Samantha.kelly@sol.doi.gov
*Attorneys for Respondent*

and *provide the above information to allow the Clerk of the Court to serve electronically through the CM/ECF File & Serve electronic filing system.*

                              **HINKLE SHANOR LLP**



                              */s/ Jared A. Hembree*